1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

7
8

| | |
|---|---|
| 9  ANTHONY JOSEPH SANCHEZ, | CASE NO. 1:07-cv-00128-LJO-SMS PC |
| 10                Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' MOTION |
| 11   v. | TO DISMISS BE DENIED and DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE |
| 12  STANCLIFF, et al., | GRANTED |
| 13                Defendants. | (Docs. 74 & 84) |
| 14  _____/ | OBJECTIONS DUE WITHIN THIRTY DAYS |

15
16

## FINDINGS AND RECOMMENDATIONS

17

**I.      Procedural History**

18           Plaintiff Anthony Joseph Sanchez ("Plaintiff") is a state pr isoner proceeding pro se and

19   in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  This action is

20   proceeding against Defendant Stancliff for use of excessive physical force in violation of the Due

21   Process Clause and for violation of the Equal Protection Clause; against Defendants Stancliff and

22   Lindini for deprivation of Plaintiff's liberty interest in his classification status without procedural

23   due process; and against the Kern County Sheriff's Department for violating Plaintiff's rights

24   under the Due Process Clause with respect to an unconstitutional policy, or practice,

25   allowing/authorizing unconstitutional use of force, on or about September 15, 2000, as alleged in

26   the First Amended Complaint.[1]  (Doc. 22.).  The events at issue in this action allegedly occurred

27   while Plaintiff was a pretrial detainee housed at the Kern County Jail.

28
_____
[1] Plaintiff's First Amended Complaint (hereinafter "FAC".)

1

On October 15, 2008, Defendants Stancliff and Kern County Sheriff's Department ("Defendants")[2] filed a motion to dismiss for failure to exhaust which was denied without prejudice. (Doc. 51.) On March 27, 2009, Defendants filed an amended motion to dismiss for failure to exhaust.[3] (Doc. 74.) Plaintiff filed an opposition on April 22, 2009, and Defendants filed a reply on April 28, 2009.[4] (Docs. 77, 79.) On June 15, 2009, Defendants filed a motion for summary judgment based on a duplicate of the evidence submitted in their amended motion to dismiss.[5] (Doc. 84.) Plaintiff did not file any documents in opposition.[6] Defendants filed a Reply Regarding Plaintiff's Failure to Oppose Motion for Summary Judgment. (Doc. 89.) The Court reviews both Defendants' motion to dismiss and for summary judgment in this finding and recommendation since both of these motions are based on the same evidence.[7]

/ / /

/ / /

---

[2] The United States Marshal was unable to locate and serve Defendant Lindini.

[3] Defendants Notice of Amended Unenumerated 12(b) Motion and Motion to Dismiss First Amended Complaint for Failure to Exhaust (hereinafter "AMTD").

[4] Plaintiff was provided with notice of the requirements for opposing an unenumerated Rule 12(b) motion on June 11, 2008. Wyatt v. Terhune, 315 F.3d 1108, 1120 n.14 (9th Cir. 2003). (Doc. 39.)

[5] Defendants' Notice of Motion and Motion for Summary Judgment and Exhibits (hereinafter "MSJ".)

[6] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the court in an order filed on June 11, 2008. Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988). (Doc. 39.) Plaintiff neither filed his own separate statement of disputed facts nor admitted or denied the facts set forth by defendant as undisputed. Local Rule 56-260(b). Defendant's statement of undisputed facts is accepted except where brought into dispute by plaintiff's verified complaint. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004) (verified complaint may be used as an opposing affidavit if it is based on pleader's personal knowledge of specific facts which are admissible in evidence). Opposition to a motion for summary judgment may be considered as an opposing affidavit for purposes of the summary judgment rule if it is based on facts within the pleader's personal knowledge. Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998). Thus, the Court infers that Plaintiff's verified First Amended Compliant and papers submitted in opposition to the Defendants' motion to dismiss present the evidence and arguments that Plaintiff wishes the Court to consider on both motions.

[7] In arriving at this findings and recommendations, this Court carefully reviewed and considered all arguments, points and authorities, declarations, depositions, exhibits, statements of undisputed facts and responses thereto, objections, and other papers filed by the parties in regards to both Defendants' motion to dismiss and motion for summary judgment as well as the pending discovery motions mentioned herein. Omission of reference to an argument, document, paper, or objection is not be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material and appropriate for Defendants' motion to dismiss and for summary judgment.

1 **II.** **Defendants' Motion to Dismiss**

2  **A.** **Exhaustion Requirement**

3   Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with

4 respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner

5 confined in any jail, prison, or other correctional facility until such administrative remedies as are

6 available are exhausted." 42 U.S.C. § 1997e(a).  Prisoners are required to exhaust the available

7 administrative remedies prior to filing suit.  <u>Jones v. Bock</u>, 549 U.S. 199, 210-12 (2007);

8 <u>McKinney v. Carey</u>, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).  Exhaustion is required

9 regardless of the relief sought by the prisoner and regardless of the relief offered by the process,

10 <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all

11 prisoner suits relating to prison life, <u>Porter v. Nussle</u>, 435 U.S. 516, 532 (2002).  "[P]roper

12 exhaustion of administrative remedies is necessary," and "demands compliance with an agency's

13 deadlines and other critical procedural rules . . . ."  <u>Woodford v. Ngo</u>, 548 U.S. 81, 83-84, 90

14 (2006).

15   Section 1997e(a) does not impose a pleading requirement, but rather, is an affirmative

16 defense under which Defendants have the burden of raising and proving the absence of

17 exhaustion.  <u>Jones</u>, 549 U.S. at 215; <u>Wyatt v. Terhune</u>, 315 F.3d 1108, 1119 (9th Cir. 2003).  The

18 failure to exhaust nonjudicial administrative remedies that are not jurisdictional is subject to an

19 unenumerated Rule 12(b) motion, rather than a summary judgment motion.  <u>Wyatt</u>, 315 F.3d at

20 1119 (*citing* <u>Ritza v. Int'l Longshoremen's & Warehousemen's Union</u>, 837 F.2d 365, 368 (9th

21 Cir. 1998) (per curium)).  In deciding a motion to dismiss for failure to exhaust administrative

22 remedies, the Court may look beyond the pleadings and decide disputed issues of fact.  <u>Wyatt</u>,

23 315 F.3d at 1119-20.  If the Court concludes that the prisoner has failed to exhaust administrative

24 remedies, the proper remedy is dismissal without prejudice.  <u>Id.</u>

25  **B.** **Available Administrative Remedy Process**

26   The Kern County Sheriff's Department has an administrative remedy appeal process in

27 place ("the Kern appeal process").  (Doc. 22, FAC, § II; Doc. 74, AMTD; Doc. 74-2, Exh. B to

28 Silva Decl.) The Kern appeal process is initiated by an inmate submitting either a verbal

complaint or written grievance which is to be acted upon by the Shift Supervisor. (Doc. 74, AMTD, pp. 12-18; Doc. 74-2, Exh. B to Silva Decl.) A written response is to issue within forty-eight (48) hours. (Id.) An inmate may submit a written appeal regarding the outcome of the appeal to the level of authority one step above the officer who initially decided the issue. (Id.) There is no apparent time limit for an inmate to submit an initiating complaint or appeal other than that the inmate must be in Defendants' custody. (Id. at Silva Decl., ¶ 7.)

### C.   **Defendants' Argument**

Defendants argue that they are entitled to dismissal because there is no evidence that Plaintiff exhausted the administrative remedy process.[8]

The First Amended Complaint alleges that Plaintiff's rights under the United States Constitution were violated while he was in Defendants' custody, on or about September 15, 2000. (*e.g.* Doc. 22, FAC, pp.4, 6, 8.) Defendants submit evidence showing that Plaintiff was not in custody on or about September 15, 2000, or September 16, 2000. (Doc. 74-2, Exh. pp.12-15; Silva Decl., ¶5, and Exh. A.) Defendants submit evidence which shows that, in 2000 and 2001, Plaintiff was in Kern County Detention Facilities from February 10, 2000 through February 17, 2000; from November 7, 2000 through November 8, 2000; and from February 25, 2001 through June 15, 2001. (Id.) Defendants argue not only was Plaintiff not in custody on the date of the alleged incident, but that he was also not at any Kern County Detention Facilities on the dates immediately following the September 15, 2000 incident at which time Plaintiff allegedly attempted to appeal/grieve the incident. (Doc. 74, AMTD, 11:16-18.) Defendants further argue and submit evidence that Plaintiff never filed a grievance regarding any aspect of the incident (Doc. 74-2, Wahl Decl. ¶ 6.e); Plaintiff did not file any grievance(s) in the years 2000 or 2001 (Id. Silva Decl. ¶ 6); Plaintiff did not file any grievances at the Lerdo Max-Med Security Facility between September 15, 2000 and July 2002 (Id. Bittle Decl. ¶ 6, Dearmore Decl. ¶¶ 5-8); there were no grievances filed by Plaintiff at the Lerdo Minimum Security Facility

---

[8] Defendants, in their first motion to dismiss, located one exhausted appeal, and in his opposition, Plaintiff identified two. However, neither is relevant to the claims in this action -- both based on content of allegations and dates of filing.

between September 15, 2000 and the end of 2001 (Id. Wright Decl. ¶ 6, Gordon Decl. ¶¶ 5-8); and there were no grievances filed by Plaintiff at the Central Receiving Facility between September 15, 2000 and the end of 2001 (Id. Barnes Decl. ¶ 6, Brien Decl. ¶¶ 5-8).  Defendants also submit evidence that filings by an inmate who has left Defendants' custody are Personnel/Citizen's Complaints.  (Id. Silva Decl. ¶ 7.)

Prior to filing suit in federal court, a prisoner must exhaust remedies through the offending prison's administrative grievance/appeal process.  Booth, 532 U.S. at 741.  "Compliance with prison grievance procedures . . . is all that is required by the PLRA to 'properly exhaust.'  The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  Jones, 549 U.S. at 218.

"[W]hen a prison's grievance procedures are silent or incomplete as to factual specificity, 'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.'"  Griffin v. Arpaio 557 F.3d 1117, 1120 (9th Cir. 2009) *citing* Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002).  "The primary purpose of a grievance is to notify the prison of a problem and facilitate its resolution, not to lay groundwork for litigation."  Id. *ref* Johnson v. Johnson, 385 F.3d 503, 522 (2004) *cited with approval in* Jones, 549 U.S. at 219.  A prison's own procedures define the contours of proper exhaustion.  Griffin 575 F.3d at 1120 *ref.* Jones 549 U.S. at 218.

There are no apparent deadlines in the Kern appeal process for someone in Defendants' custody to initiate the appeal process.  (Doc. 74-2, Silva Decl. at ¶ 7 & Exh. B.)  Thus, it appears that Plaintiff could have filed a verbal complaint or written grievance at any time after the incident, as long as he was in Defendants' custody.

Defendants' evidence acknowledges that Plaintiff was in their custody on February 26, 2001 (Id. at pg. 15), and that he lodged a complaint against staff on that date (Doc. 74-3, Exhs. pp. 2-3).  Defendants submit the declaration of RoseMary Wahl and argue that her letter of March 31, 2006 was "merely follow-up correspondence regarding the investigation of

1   [Plaintiff's] *February 28, 2006* Personnel Complaint, . . ." which did not initiate the Kern appeal

2   process.  (Doc. 74-2, Wahl Dec, ¶ 5.b emphasis added)  However, the March 31, 2006

3   correspondence advised Plaintiff that his allegations were sustained after completion of

4   investigation into the complaint Plaintiff lodged against members of the Kern County Sheriff's

5   Department on *February 26, 2001.*  (Doc. 74-3, Exhs. pp. 2-3.)  Defendants do nothing to

6   explain the discrepancy between the dates and terminology of these two accusatory actions by

7   Plaintiff.  Further, while Defendants submit a copy of a Personnel/Citizen's Complaint that

8   Plaintiff filed on February 28, 2006 and a letter acknowledging receipt thereof (Doc. 74-3, pp. 4-

9   12), they failed to submit a copy of the document lodged by Plaintiff on February 26, 2001 or any

10  letter acknowledging receipt thereof to show that Defendants treated it like a Personnel/Citizen's

11  Complaint.  Defendants further appear to argue that the use of the word "complaint" variously by

12  their staff and by Plaintiff indicates that any February 26, 2001 action by Plaintiff was necessarily

13  a Personnel/Citizen's Complaint, and not a grievance sufficient to have initiated the Kern appeal

14  process.  However, the Kern appeal process uses both the words "complaint" and "grievance"

15  such that the Court is unable to accept Defendants' assertion that any document and/or action

16  labeled as a "complaint" does not initiate the Kern appeal process for exhaustion purposes.

17  (Doc. 74-2, Exh B to Silva Decl.)  Thus, Defendants' own evidence does not lead to the

18  conclusion that the allegations Plaintiff lodged on February 26, 2001 could have only been a

19  Personnel/Citizen's Complaint, and not some other action which would have sufficed to initiate

20  the Kern appeal process.

21      Further, the Kern appeal process specifically provides for resolution of "verbal inmate

22  complaints."  (Id.)  This necessarily implies that someone in Defendants' custody is not restricted

23  to only submitting a written document, let alone one entitled "grievance," to effectively initiate

24  the Kern appeal process.  Defendants do not submit any evidence to prove that Plaintiff did not

25  make a verbal complaint "following the incident" which would have sufficed to initiate the Kern

26  appeal process.

27      Finally, while the absence of evidence that a grievance was officially filed (as Defendants

28  present) may indicate Plaintiff never submitted the appeal, it may also indicate that the appeal

6

was discarded or ignored by staff, as Plaintiff contends.[9]  *See* <u>Spence v. Director of Corr.</u>, 2007 WL 61006, No. CIV S-05-0690 GEB KFM PC, *3 (E.D.Cal. Jan. 8, 2007) (If custody officials "are interfering with inmates' ability to properly file [inmate grievances/appeals], then there will be no official record of the [inmate's grievances/appeals] having been 'accepted.'"), <u>findings and recommendations adopted in full</u>, 2007 WL 738528 (E.D.Cal. Mar. 6, 2007).  Additionally, although the Ninth Circuit has not yet decided the issue, <u>Ngo v. Woodford</u>, 539 F.3d 1108, 1110 (9th Cir. 2008) (it is unclear if any exceptions to exhaustion apply), other Circuit Courts have addressed the issue and held that exhaustion occurs when prison officials prevent exhaustion from occurring through misconduct or fail to respond to a grievance within the policy time limits, *e.g.*, <u>Aquilar-Avellaveda v. Terrell</u>, 478 F.3d 1223, 1225 (10th Cir. 2007) (Courts are "obligated to ensure any defects in exhaustion were not procured from the action of inaction of prison officials."); <u>Kaba v. Stepp</u>, 458 F.3d 678, 684 (7th Cir. 2006) ("Prison officials may not take unfair advantage of the exhaustion requirement, [] and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." (*quoting* <u>Dole v. Chandler</u>, 438 F.3d 804, 809 (7th Cir. 2006))); <u>Boyd v. Corrections Corp. of America</u>, 380 F.3d 989, 996 (6th Cir. 2004)(administrative remedies are exhausted when prison officials fail to timely respond to properly filed grievance).

In a situation such as this where Plaintiff submitted evidence that he attempted to properly utilize the appeals process, but received no response to his appeals, Defendants must do more than show an inability to locate an appeal.  Defendants are not entitled to dismissal unless they address Plaintiff's contention and demonstrate what remedies were available in such a situation – which Defendants did not do.  Further, where the parties offer differing versions of events based on competing declarations, the issue is one of witness credibility and the Court cannot make that requisite assessment on a motion to dismiss.  Defendants have not demonstrated Plaintiff's failure to exhaust.  <u>Jones</u>, 549 U.S. at 216; <u>Brown v. Valoff</u>, 422 F.3d

---

[9] In his opposition, Plaintiff submits a declaration stating that "following the incident" and "prior to leaving" Defendants' custody, he filed three inmate appeals with "housing unit floor officers during the regular walk through" which were never responded to.  (Doc. 77, p. 11, ¶¶ 1-5.)

1    926, 936 (9th Cir. 2005).

2        The Court is not finding that Plaintiff exhausted administrative remedies.  Rather, the

3    Court is merely finding that Defendants have not met their burden and are not entitled, at this

4    time, to dismissal for failure to exhaust.  Accordingly, the Court recommends Defendants'

5    amended motion to dismiss be denied without prejudice.

6    **III.    Defendants' Motion for Summary Judgment**

7        However, the Court finds basis for dismissal of this action in the Defendants' motion for

8    summary judgment.  (Doc. 84, MSJ.)

9        **A.    Legal Standard**

10       Summary judgment is appropriate when it is demonstrated that there exists no genuine

11   issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

12   Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

13              [A]lways bears the initial responsibility of informing the district
             court of the basis for its motion, and identifying those portions of
14           "the pleadings, depositions, answers to interrogatories, and
             admissions on file, together with the affidavits, if any," which it
15           believes demonstrate the absence of a genuine issue of material
             fact.
16
17   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the

18   burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made

19   in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on

20   file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and

21   upon motion, against a party who fails to make a showing sufficient to establish the existence of

22   an element essential to that party's case, and on which that party will bear the burden of proof at

23   trial.  Id. at 322.  "[A] complete failure of proof concerning an essential element of the

24   nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a

25   circumstance, summary judgment should be granted, "so long as whatever is before the district

26   court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

27   satisfied."  Id. at 323.  Where the nonmoving party has the burden of proof at trial, "the burden

28   on the moving party may be discharged by 'showing' - that is pointing out to the district court -

1   that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

2        If the moving party meets its initial responsibility, the burden then shifts to the opposing

3   party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec.

4   Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

5   existence of this factual dispute, the opposing party may not rely upon the denials of its

6   pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or

7   admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e);

8   Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in

9   contention is material, i.e. a fact that might affect the outcome of the suit under the governing

10  law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific

11  Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e.,

12  the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool

13  v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

14       In the endeavor to establish the existence of a factual dispute, the opposing party need not

15  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

16  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

17  trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

18  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

19  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

20  amendments).

21       In resolving the summary judgment motion, the Court examines the pleadings,

22  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

23  any.  Rule 56(c).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at

24  255, and all reasonable inferences that may be drawn from the facts placed before the Court must

25  be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v.

26  Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam).  Nevertheless, inferences are not drawn out

27  of the air, and it is the opposing party's obligation to produce a factual predicate from which the

28  inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D.

Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

**B.     Analysis**

In support of their motion for summary judgment Defendants submit an exact duplicate of the evidence they submitted in support of their amended motion to dismiss.  (Docs. 74-2, 74-3, 87-3.)  Defendants contend that Plaintiff cannot raise a triable issue of fact as to whether he was in their custody on or about September 15, 2000, as alleged in Plaintiff's First Amended Complaint, so as to entitle them to judgment as a matter of law.

As discussed above, the First Amended Complaint, upon which the action proceeds, alleges that Plaintiff's rights under the United States Constitution were violated while he was in Defendants' custody, on or about September 15, 2000.  (*e.g.* Doc. 22, FAC, pp.4, 6, 8.)  If Plaintiff was not in Defendants' custody on or about September 15, 2000, Defendants could not have violated his constitutional rights on or about September 15, 2000 as alleged.  Defendants have shown that Plaintiff was not in their custody on or about September 15, 2000.  (Doc. 85, UMF[10] # 07; Doc. 74-2, Exh. A to Silva Decl.)  The Court finds that Defendants have met their initial burden of informing the Court of the basis for their motion, and submitting evidence which demonstrates the absence of a genuine issue of material fact – that Plaintiff was not in their custody on or about September 15, 2000.[11]  The burden therefore shifts to Plaintiff to establish the existence of a genuine issue as to any material fact.  *See* Matsushita, 475 U.S. at 586.

Since Plaintiff is pro se, and did not file an opposition to Defendants' motion for

---

[10] Undisputed Material Fact (hereinafter "UMF").

[11] Since, as discussed herein below, there is no genuine issue of material fact as to whether Plaintiff was in Defendants' custody on September 15, 2000, the Court need not expend its limited resources to reiterate and/or otherwise evaluate all the other undisputed material facts, supporting evidence, and arguments submitted by Defendants.

summary judgment, or any evidence to dispute Defendants' evidence that Plaintiff was not in

their custody on or about September 15, 2000, and so as to provide him every leniency, the Court

reviewed all pending motions, from which Plaintiff might draw evidence to show that he was in

Defendants' custody on the date of incident as alleged in the First Amended Complaint.

        The Court reviewed "Plaintiff's Motion for Court Order Compelling Defendants to

Disclose and Produce Items Previously Requested (Rule 37)" (Doc. 65), "Plaintiff's

Supplemental Rule § [sic] 36 Request to Disclose and Produce (Supplemental No.2)" (Doc. 67),

"Plaintiff's Motion for Thirty Day Extension to Discovery Cut-Off Dates" (Doc. 76), and

"Plaintiff's Motion for Subpoena's for Documents Rule 45(a)(3)" (Doc. 78) to assess if the

documents sought might be germane to whether Plaintiff was in Defendants' custody in on or

about September 15, 2000 so as to justify a continuance of the present motion to allow discovery

to be had.  Rule 56(f) of the Federal Rules of Civil Procedure provides as follows:

> (f) When Affidavits are Unavailable.  Should it appear from the affidavits of a
> party opposing the motion that the party cannot for reasons stated present by
> affidavit facts essential to justify the party's opposition, the court may refuse the
> application for judgment or may order a continuance to permit affidavits to be
> obtained or depositions to be taken or discovery to be had or may make such other
> order as is just.

In order to prevail on a Rule 56(f) motion, the party "must show (1) that they have set forth in

affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts

sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment

motion."  State of California v. Campbell, 138 F.2d 772, 779 (9th Cir. 1998).  "In making a Rule

56(f) motion, a party opposing summary judgment 'must make clear what information is sought

and how it would preclude summary judgment.'"  Margolis v. Ryan, 140 F.3d 850, 853 (9th Cir.

1998) (quoting Garrett v. City and County of San Francisco, 818 F.2d 1515, 1518 (9th Cir.

1987)).  The burden is on the party seeking to conduct additional discovery to put forth sufficient

facts to show that the evidence sought exists.  Volk v. D. A. Davidson & Co., 816 F.2d 1406,

1416 (9th Cir. 1987).

        Plaintiff did not submit a declaration/affidavit in support of his motion for subpoena's for

documents, nor did he intimate in any way how he believed the documents sought would address

1   any issues in this case.  (Doc. 78.)  Plaintiff did submit a declaration in support of his motion to

2   compel production of documents (Doc. 65, pp. 10-15), which only addressed his requests for a

3   copy of the Internal Affairs file No. 01-0411-043, a copy of a five page Citizen's Complaint

4   Plaintiff filed (of which Plaintiff's copy was missing page five), and a transcribed copy of the

5   recorded statement Plaintiff gave on October 31, 2001.  However, Defendants produced the latter

6   two documents as a copy of a five page Citizen's Complaint filed by Plaintiff (missing page

7   five)[12] was submitted in support of their motions (Doc. 74-3, Exhs. pp. 5-10) as was a transcribed

8   copy of Plaintiff's recorded statement (Id. at 14-24).  The Court has reviewed these two

9   documents and finds that neither contain any evidence to establish that Plaintiff was in

10  Defendants' custody on or about September 15, 2000.  Despite having had opportunity to file an

11  opposition and/or declaration under Rule 56(f), Plaintiff has failed to make clear how the Internal

12  Affairs file of the incident might establish that he was in Defendants' custody on or about

13  September 15, 2000 so as to preclude summary judgment.  Plaintiff has not met (nor even

14  attempted to meet) his burden to show that evidence, to prove he was in Defendants' custody on

15  or about September 15, 2000, exists so as to be allowed to conduct additional discovery.

16      The Court finds that none of Plaintiff's motions even so much as suggest the existence of

17  information germane to Plaintiff's custodial status on or about September 15, 2000 as alleged.[13]

18  Apparently, Plaintiff also felt that none of the documents sought would likely establish that he

19  was in Defendants custody on or about September 15, 2000 as he did not file an affidavit under

20  Federal Rule of Civil Procedure 56(f) seeking a continuance to allow discovery to be undertaken

21  that would justify continuing the motion.

22      Defendants have established that Plaintiff was not in Defendants' custody on or about

23  September 15, 2000.  Plaintiff has not established a genuine issue of material fact as to whether

24  he was in Defendant's custody on or about September 15, 2000.  The record taken as a whole

25

26

27          [12] The Court has reviewed the submitted pages of this document and finds that it is highly unlikely, if not
    impossible that the missing page might contain evidence to prove that Plaintiff was in Defendants' custody on
    September 15, 2000.

28          [13] These motions are denied in a concurrently issued order.

1  could not lead a rational trier of fact to find that Plaintiff was in Defendants' custody on or about

2  September 15, 2000.  There is no genuine issue for trial as to whether the Plaintiff was in

3  Defendants' custody for his rights to have been violated on or about September 15, 2000 as

4  alleged in the First Amended Complaint.[14]  Thus, Defendants are entitled to judgment as a matter

5  of law such that their motion for summary judgment should be granted.

6  **V.   Conclusions and Recommendations**

7  As set forth herein, the Court HEREBY RECOMMENDS:

8  (1)     that Defendants' Amended Unenumerated 12(b) Motion to Dismiss, filed March

9            27, 2009, be DENIED without prejudice; and

10  (2)     that Defendants' are entitled to judgment as a matter of law such that their Motion

11            for Summary Judgment, filed June 15, 2009, be GRANTED; and

12  (3)     that the Clerk of the Court be directed to enter judgment for the Defendants and

13            against Plaintiff.

14  These Findings and Recommendations will be submitted to the United States District

15  Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within

16  **fifteen (15) days** after being served with these Findings and Recommendations, the parties may

17  file written objections with the Court.  The document should be captioned "Objections to

18  Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file

19  objections within the specified time may waive the right to appeal the District Court's order.

20  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

21  IT IS SO ORDERED.

22  **Dated:    August 14, 2009              /s/ Sandra M. Snyder**
                                            UNITED STATES MAGISTRATE JUDGE

[14] Since Plaintiff fails to present any evidence to oppose Defendants' assertion that he was not in their custody on the date(s) alleged in the First Amended Complaint, the Court does not reach Defendants' other arguments regarding statute of limitations, tolling, and Monell liability.  The issue of exhaustion of administrative remedies was discussed in the portion of this finding and recommendation dealing with Defendants' unenumerated motion to dismiss.